CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 02 2012

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KARLHEINZ ANTHONY WOOD, ) | Criminal Case No. 7:10cr00070-2 |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 2255 MEMORANDUM OPINION |
| ) | |
| UNITED STATES OF AMERICA ) | |
| ) | By: Samuel G. Wilson |
| Respondent. ) | United States District Judge |

This is a motion pursuant to 28 U.S.C. § 2255 by Karlheinz Anthony Wood, proceeding *pro se*, challenging the validity of his guilty plea to possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c). Wood claims that his counsel rendered ineffective assistance in failing to properly advise him of the elements of that offense and that the elements "were never presented to or by the Court during the plea colloquy." (Resp. in Opp. 4, ECF No. 145.) The United States has moved to dismiss, claiming that Wood's guilty plea was knowing and voluntary, that he waived his right to collaterally attack his plea and sentence, and that his motion lacks merit. The court denies Wood's motion on the merits.

I.

The United States charged Wood and three others, Christopher J. Crawford, Donald Jerome Whorley, and Patrick Cleofoster Jones, II, in Count One of a ten-count indictment with conspiracy to distribute more than 100 grams of a mixture or substance containing heroin, a Schedule I narcotic controlled substance, in violation of 21 U.S.C. § 846. Count Nine of the indictment also charged Crawford and Wood with knowingly and intentionally possessing with intent to distribute more than 100 grams of a mixture or substance containing heroin on or about October 13, 2010, in violation of 21 U.S.C. § 841(a)(1), and Count Ten charged Crawford and

Wood with knowingly possessing a firearm "in furtherance of [Count 9]" in violation of 18 U.S.C. § 924(c).

Wood entered into a written plea agreement with the United States to plead guilty to Counts One and Ten. According to the written plea agreement that Wood signed, Wood's attorney "informed [Wood] of the nature of the charges and the elements of the charges that must be proved by the United States beyond a reasonable doubt before [Wood] could be found guilty as charged." Wood acknowledged that the court could sentence him from five to forty years on Count One (the heroin conspiracy) and five years to life on Count Ten (the firearm charge); that he was waiving his right to appeal (except for nonwaivable issues); that he was waiving his right to collaterally attack his plea and sentence (except for a collateral attack based on ineffective assistance); that he was fully satisfied with his attorney's representation and advice and that he would "make known to the court no later than at the time of sentencing any dissatisfaction or complaint [that he might] have with [his] attorney's representation"; and that there was a "sufficient factual basis to support each and every material factual allegation contained within the charging documents to which [he was] pleading guilty." The agreement contained a number of promises, including the government's promise to recommend the low end of the guideline range, to recommend that he receive acceptance of responsibility and to dismiss Count Nine. In exchange, Wood agreed to plead guilty to Counts One and Ten.

Wood pled guilty on April 5, 2011, in accordance with his plea agreement. Whorley and Jones pled at the same time. The material terms of each plea agreement were detailed in open court. During the Rule 11 colloquy, the court explored with Wood the terms and consequences of Wood's agreement and plea. The court read Counts One and Ten to Wood and asked him if he understood the charges. He indicated that he had read the charges against him and that his

2

counsel had explained the elements of each offense to him (that is, what the United States would have to prove in order for him to be found guilty) and that he understood those elements. The court pressed its inquiry further as to Count Ten. Immediately after reading Count Ten (which charged that on October 13, 2010, Crawford and Wood "did knowingly possess a firearm in furtherance of a drug-trafficking crime which may be prosecuted in a court of the United States as heretofore set forth in Count Nine of [the] indictment"), the court explained: "[e]ssentially, Count Ten says that you committed the offense alleged in Count Nine, and that you possessed a firearm in furtherance of that crime." (Tr. 13, ECF No. 136.) The court then asked "do you understand that?" Wood stated that he understood and that his counsel had explained to him the elements of that offense and that he understood those elements. Before hearing a summary of the evidence to support the plea, the court asked Wood whether he was pleading guilty because he was in fact guilty, and Wood stated that he was.

The court then heard a summary of the evidence to support the plea. According to the summary:

> [T]he events leading to the indictment culminated on the 12th of October, 2010, in Union Hall, in Franklin County, in the Western District of Virginia.
> Slightly prior to that, the marshal's service was looking for a fugitive out of New Jersey, had a car description, had some sense this fugitive was going to be in that area. They actually saw the car, followed it to a convenience store. When the car stopped there, they approached, found Mr. Wood to be the driver of the car; Mr. Crawford, the codefendant, was the passenger; had a conversation with him. Also ran a dog on the car. The dog hit on the car.
> Based on that, police searched and found a hidden compartment in the car passenger side, where Mr. Crawford was seated, that contained approximately 50 grams of bulk heroin.
> Based on this, they followed up with the search warrant on a residence at Union Hall that was rented by Mr. Wood's girlfriend. Rather than having the door broken open, Mr. Wood provided a key to that residence and claimed a bedroom therein.
> Inside the house, police found in the common area, the combined living room/kitchen area, approximately 50 grams of bulk heroin. There were a number of firearms scattered throughout the residence.

3

In the closet of the bedroom that Mr. Wood had claimed, they found a blue tote box, one of the plastic Wal-Mart-type tote boxes, that contained essentially the complete setup for processing of bulk heroin and bag heroin: glassine bags, a grinder, a breathing mask, mortar and pestle, stamp kit.

Also in that bedroom, together with Mr. Wood's identification, fake ID, they found four firearms.

Going back a little bit earlier in time, on October 9th, 2010, the police conducted a controlled purchase, using an informant, from Mr. Whorley. The CI had to go out riding with Mr. Whorley, because Mr. Whorley didn't have any supply at that time, but went with Mr. Whorley and actually met with Crawford and received the heroin.

The heroin was marked with stamps consistent with those found in the house. So if the Court is familiar that heroin bags are often stamped with a certain logo that is sort of like a brand name, and the stamps that were on the bag were the same stamps found in the Franklin County house.

Additionally, the government also discovered Mr. Whorley's telephone number in Crawford's phone, showing a link there.

Whorley made some statements later on that said he was supplying Mr. Jones. In fact, the police had been making controlled purchases of heroin on a number of occasions. These were again showing the same stamps out of the Franklin County house.

On the 22nd of September, folks running a storage unit company where a unit was rented by Mr. Jones, reported him going in and out every few minutes, so very frequently, so they called the police. The police ran a dog, and that hit on Mr. Jones' storage unit.

Based on that, they obtained a search warrant, went in and found 600 bags of heroin in the unit that was in Mr. Jones' name. They found in the stack a .22-caliber pistol.

The controlled purchase and the search warrant were in the city of Roanoke.

The total amount of drugs the government can predict is somewhere in the range of 100 to 400 grams of heroin. And these are the defendants as named.

(Tr. 20–23, ECF No. 136.)

Following the summary, the court asked Wood whether he had heard anything with which he disagreed, and Wood responded "no sir." Wood then pled guilty to Counts One and Ten. The court found that he was fully competent and capable of entering an informed plea and that his plea of guilty was a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the counts to which he pled, accepted his plea, adjudged him guilty of those offenses, and ordered a presentence report. The presentence report

4

noted that Wood had accepted responsibility for both offenses, and the court sentenced him to the mandatory minimum of sixty months consecutive for each offense.

Wood did not appeal his conviction and sentence. However, he now challenges his plea and sentence to Count Ten, the § 924(c) offense. Wood alleges that his counsel did not explain to him the elements of that offense, but simply stated that "if there are drugs and guns in the house, you['re] guilty." (Mem. in Supp. 7, ECF No. 143.)

## II.

Wood claims there was "no nexus between the offense Wood pleaded guilty to . . . and the firearms." (Resp. in Opp. 4, ECF No. 145.) Wood claims his counsel rendered ineffective assistance in failing to explain the connection between the drug-trafficking crime and the firearms necessary for a violation of § 924(c). He claims that had counsel properly advised him he would not have pled guilty to the firearm charge. The United States has moved to dismiss based on Wood's collateral attack waiver. By its express terms, however, that waiver does not include effective assistance claims. Nevertheless, it is clear from the plea colloquy that Wood understood the nexus required before pleading and that there is not a reasonable probability that but for counsel's alleged unprofessional errors Wood would have insisted on going to trial rather than pleading guilty.

Under the Sixth Amendment, an accused must have sufficiently competent assistance of counsel to ensure a fair trial. Strickland v. Washington, 466 U.S. 668, 685 (1984). To establish an ineffective assistance of counsel claim, Wood must show both a deficient performance and a resulting prejudice. Id. at 687. To establish deficient performance, Wood must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. Id. at 687–88. Wood must

overcome the strong presumption that counsel's performance was within the range of competence demanded of attorneys defending criminal cases, id. at 689, and the court must defer to counsel's strategic decisions, avoiding the distorted effect of hindsight. Id. at 688–89. Even if he shows that counsel's performance was deficient, Wood is not entitled to habeas relief unless he satisfies the second Strickland prong by showing that counsel's errors "actually had an adverse effect on [his] defense." Id. at 693. At a minimum, Wood must demonstrate "a reasonable probability" that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694–95. If it is clear that no prejudice resulted from an alleged error, the court need not inquire whether the error amounts to deficient representation. Id. at 697. "In the context of a guilty plea, the petitioner must demonstrate . . . 'that there is a reasonable probability that, but for counsel's errors, he would not have plead guilty and would have insisted on going to trial.'" Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

A defendant cannot show prejudice by claiming that his counsel misadvised him concerning the elements of the offense to which he pled when the district court correctly apprised the defendant of those elements in the course of the Rule 11 colloquy. See United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc) ("[I]f the information given by the court at the Rule 11 hearing correction clarifies the earlier or erroneous information given by the tenant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and the defendant."). The elements of a §924(c) possession offense are conceptually straightforward: (1) the defendant must have knowingly possessed the firearm, and (2) that possession must have been in furtherance of a drug-trafficking crime or crime of violence. Here, Wood concedes that

he knowingly possessed the firearm and that he engaged in drug trafficking. But he denies that he understood the necessity of the connection between his drug trafficking and his possession of the firearms at the time he pled. However, the plea colloquy shows otherwise. The court explained the simple, straightforward connection required, informing Wood: "[e]ssentially, Count Ten says that you committed the offense alleged in Count Nine, and that you possessed a firearm in furtherance of that crime." (Tr. 13, ECF No. 136.) The court then asked "do you understand that?" Woods stated that he understood and that his counsel had explained to him the elements of that offense and that he understood those elements.

The "in furtherance of" §924(c) language has a plain, natural, and understandable meaning to a layperson. See United States v. Morris, 576 F.3d 661, 672 (7th Cir. 2009). Thus, "[a]n instructive line of cases holds that it is not error—plain or otherwise—to fail to give a definition of a statutory term or phrase that carries its natural meaning and that meaning is accessible to lay jurors." Id. The same would be true for a defendant during a Rule 11 colloquy. Consequently, by apprising Wood of the requirement that the firearms further his drug-trafficking offense, the court apprised Wood of the nexus required. After hearing a summary of the evidence (including the presence of heroin at a residence, a "complete setup for processing of bulk heroin and bag heroin," and four firearms in Wood's bedroom at that residence), the court concluded that a factual basis supported Wood's plea and that it was a knowing and voluntary plea supported by an independent basis in fact, and the court accepted it. The court's findings and the acceptance of Wood's guilty plea were no mere formalisms. The court concluded as a matter of fact that Wood understood the nature and elements of the offenses to which he was pleading as well as the consequences of his plea. Wood's current motion offers nothing capable of altering the court's conclusions or suggesting that there is a reasonable probability that but for

7

counsel's alleged unprofessional errors, Wood would not have pled guilty but rather would have insisted on going to trial.[1]

### III.

For the reasons stated, the court denies Wood's § 2255 motion.

**ENTER**: November 1, 2012.

UNITED STATES DISTRICT JUDGE

---

[1] Wood's argument that there was insufficient evidence of a connection between the firearms in his bedroom and his drug trafficking paraphernalia there to support his plea is frivolous. "When the guns are possessed along with materials of a drug trafficker, it is a reasonable inference that the guns protect or embolden the criminal enterprise." United States v. LePage, 477 F.3d 45, 489 (7th Cir. 2007). Their presence together is ordinarily sufficient to support the conclusion that they are connected. See United States v. Kimberlin, 18 F.3d 1156, 1158 (4th Cir. 1994) ("Determining whether an adequate connection has been made between a firearm and an underlying drug offense is a classic jury question."). The claim is also within the scope of Wood's collateral attack waiver.

8